1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA MADRIGAL, | Case No.  1:15-cv-00809-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| NATIONSTAR MORTGAGE LLC, et al., | (ECF No. 56-57, 60, 62, 69, 70, 73) |
| Defendants. | |

Currently before the Court is Defendant Nationstar Mortgage LLC's ("Defendant Nationstar") motion for summary judgment.

## I.

## BACKGROUND

Plaintiff's ex-husband executed a deed of trust with Countrywide Home Loan, Inc. to purchase property at 2433 N. Oak Park Ct., Visalia, California 93291.  (Sec. Am. Compl. ¶ 18, ECF No. 23.)  Plaintiff was awarded an interest in and liability for the home during divorce proceedings.  (Sec. Am. Compl. ¶ 17.)  The property was awarded as her sole and separate property along with any mortgage encumbering the property.  (Sec. Am. Compl. ¶ 17.)  Plaintiff resided at the home and used her income to make monthly mortgage payments.  (Sec. Am. Compl. ¶ 18.)

At some point in time, the beneficial interest in the loan and servicing the loan was

1  transferred to Defendant Nationstar.  (Sec. Am. Compl. ¶ 20.)  As of March 2014, Plaintiff's

2  monthly mortgage payments were $605.74 which was comprised of $119.13 principal, $339.26

3  interest, and $147.35 escrow (for taxes and insurance).  (Sec. Am. Compl. ¶ 21.)  Plaintiff made

4  her March 2014 payment and was current on the loan as of March 2014.  (Sec. Am. Compl. ¶

5  21.)

6        Plaintiff made a loan payment in the amount of $605.74 in April 2014, but it was held in

7  suspense and not credited to her loan balance.  (Sec. Am. Compl. ¶ 22.)  In May 2014, Plaintiff's

8  escrow amount changed without notice from $147.35 to $546.17.  (Sec. Am. Compl. ¶ 22.)  On

9  or about July and August 2014, Defendant Nationstar informed Plaintiff that it had not received

10  the loan payments for the months of July and August 2014, although Plaintiff had made loan

11  payments.  (Sec. Am. Compl. ¶ 24.)  Plaintiff made payments for September and October 2014,

12  but Defendant Nationstar returned the payments to Plaintiff and refused to credit the loan for the

13  payments made.  (Sec. Am. Compl. ¶ 25.)  On or about April 27, 2015, Defendant Nationstar

14  caused the foreclosure trustee to record a notice of trustee sale against the property.  (Sec. Am.

15  Compl. ¶ 27.)

16        On May 15, 2015, Plaintiff filed an action in the Tulare County Superior Court seeking a

17  temporary restraining order to prevent the foreclosure sale of the property and a complaint

18  against Defendants Nationstar and Barrett Daffin Frappier Treder& Weiss, LLP.  (ECF No. 1 at

19  8-63.)  On May 28, 2015, Defendant Nationstar removed this action to the Eastern District of

20  California on the basis of diversity jurisdiction.   (ECF No. 1.)   This action is currently

21  proceeding on the second amended complaint, filed August 4, 2015, against Defendant

22  Nationstar on claims of breach of contract, breach of the covenant of good faith and fair dealing,

23  violation of California Business and Professions Code Section 17200, and for declaratory and

24  injunctive relief.[1]  (ECF No. 23.)

25        On January 31, 2017, Defendant Nationstar filed a motion for summary judgment,

---

[1] Defendant Barrett Daffin Frappier Treder & Weiss were named in the second amended complaint, but on September 9, 2015, an order issued pursuant to the stipulation of the parties that Defendant Barrett Daffin Frappier Treder & Weiss need not actively participate in this action and is being treated as a nominal party to this action. (ECF No. 30.)

request for judicial notice,[2] and request to file documents under seal.  (ECF Nos. 56-58.)  On February 1, 2017, Defendant Nationstar filed an amended notice of motion for summary judgment, declaration of Ashley E. Calhoun, motion to file separate statement of undisputed facts, and statement of undisputed facts.  (ECF Nos. 59-62.)  On February 2, 2017, an order issued granting Defendant Nationstar Mortgage's motion to file a separate statement of undisputed facts.  (ECF No. 63.)

On February 21, 2017, an order issued denying Defendant Nationstar's request to file documents under seal.  (ECF No. 64.)  On February 27, 2017, Defendant Nationstar filed a supplement to the motion for summary judgment and a renewed motion to seal documents.  (ECF Nos. 69, 70.)  Defendant's motion to file documents under seal was granted in part on March 1, 2017.  (ECF No. 71.)  On March 8, 2017, Defendant Nationstar filed documents under seal.  (ECF No. 73.)

## II.

## UNDISPUTED FACTS

1.      In 2000, a borrower, a non-party, obtained a loan evidenced by a note.  (Nationstar Mortgage LLC's Decl. (hereafter "Decl. of Nationstar") ¶ 10; Depo. of Norma Madrigal (hereafter "Decl. of Pl.") p. 11:18-20.)

2.      The loan was secured by a deed of trust recorded against property in Visalia, California.  (Decl. of Nationstar ¶ 11; Request for Judicial Notice Exh. 1-3.)

3.      Plaintiff did not sign and was not a party to the note or deed of trust.  (Decl. of Nationstar ¶ 10-11; Decl. of Pl. 24:8-10, 29:12-14.)

4.      Servicing of the loan transferred from non-party Bank of America, N.A. to Nationstar in 2013.  (Decl. of Nationstar ¶ 14.)

5.      When the loan transferred to Nationstar, there was a $1,625.36 escrow shortage.

---

[2] Defendant Nationstar requests that the Court take judicial notice of official records of the County of Tulare and Tulare County Superior Court.  Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  The Court grants Defendant Nationstar's request for judicial notice.

(Decl. of Nationstar ¶ 15.)

6.      A detailed escrow statement itemizing payments to and from the escrow account was sent to the borrower.  (Decl. of Nationstar ¶ 7-8, 15.)

7.      The full monthly payment on the loan from June 2013 (when Nationstar became servicer) to March 2014 was $605.74.  (Decl. of Nationstar ¶ 16.)

8.      Monthly payments owed on the loan from June 2013 to March 2014 were made in full each month and were applied to the loan.  (Decl. of Nationstar ¶ 16.)

9.      Effective April 1, 2014, the monthly payment increased by $398.82 to $1,004.56 as a result of the escrow shortage and increases to the borrower's taxes and insurance premiums. (Decl. of Nationstar ¶ 17.)

10.     Nationstar sent a statement to the borrower explaining that due to the escrow shortage and changes in the borrower's taxes and insurance premiums, the monthly payment due would increase to $1,004.56, effective April 1, 2014.  (Decl. of Nationstar ¶ 17.)

11.     A $605.74 loan payment was made on or about April 7, 2014.  (Decl. of Nationstar ¶ 18.)

12.     Nationstar could not immediately apply the payment to the loan because the full payment owed for April 1, 2014 was $1,004.56 and Nationstar cannot apply partial payments. (Decl. of Nationstar ¶ 18.)

13.     Nationstar placed the funds in the borrower suspense account, which is an account used when a borrower submits funds insufficient to make the complete payment due.  (Decl. of Nationstar ¶ 18.)

14.     Funds from a suspense account are applied to a loan once there are sufficient funds in the suspense account to cover one full payment.  (Decl. of Nationstar ¶ 18.)

15.     A $605.74 loan payment was made on or about May 9, 2014.  (Decl. of Nationstar ¶ 19.)

16.     Like the prior payment, it was insufficient to cover the full $1,004.56 monthly payment owed.  (Decl. of Nationstar ¶ 19.)

17.     Because there were sufficient funds in the suspense account to add to the $605.74

4

1   payment to make a full payment, Nationstar removed $398.82 from the borrower's suspense

2   account, added it to the $605.74 partial payment, and applied a $1004.56 payment to the loan.

3   (Decl. of Nationstar ¶ 19.)

4       18.    The payment addressed in paragraph 17, above, was applied to the payment due

5   April 1, 2014.  (Decl. of Nationstar ¶ 19.)

6       19.    A $605.74 loan payment was made on or about June 9, 2014.  (Decl. of Nationstar

7   ¶ 20.)

8       20.    Nationstar could not immediately apply the payment to the loan because the

9   payment was less than the required monthly payment of $1,004.56 and there were insufficient

10   funds in the suspense account to cover a full payment.  (Decl. of Nationstar ¶ 20.)

11       21.    The payment addressed in paragraph 20, above, was placed in the borrower's

12   suspense account.  (Decl. of Nationstar ¶ 20.)

13       22.    Nationstar reanalyzed the escrow account and as a result, the required monthly

14   payment decreased slightly, to $940.95, effective July 1, 2014.  (Decl. of Nationstar ¶ 21.)

15       23.    The escrow disclosure statement sent to the borrower explained the shortage and

16   changes to the borrower's taxes and insurance premiums and notified the borrower the new

17   monthly payment due was $940.95.  (Decl. of Nationstar ¶ 21.)

18       24.    A $605.74 loan payment was made on or about July 9, 2014.  (Decl. of Nationstar

19   ¶ 22.)

20       25.    The loan remained due for the May 2014 payment of $1,004.56 and the $605.74

21   payment was insufficient to cover the full payment.  (Decl. of Nationstar ¶ 22.)

22       26.    Because there were sufficient funds in the suspense account to add to the $605.74

23   payment to make a full payment, Nationstar removed $398.82 from the borrower's suspense

24   account, added it to the $605.74 partial payment, and applied a $1,004.56 payment to the loan.

25   (Decl. of Nationstar ¶ 22.)

26       27.    The payment addressed in paragraph 26, above, was applied to the payment due

27   May 1, 2014.  (Decl. of Nationstar ¶ 22.)

28       28.    A $605.74 loan payment was made on or about August 12, 2014.  (Decl. of

Nationstar ¶ 23.)

29. The loan was then due for the June 1, 2014 payment of $1,004.56 and the $605.74 payment was insufficient to cover the full payment. (Decl. of Nationstar ¶ 23.)

30. Because there were sufficient funds in the suspense account to add to the $605.74 payment to make a full payment, Nationstar removed $398.82 from the borrower's suspense account, added it to the $605.74 partial payment, and applied a $1,004.56 payment to the loan. (Decl. of Nationstar ¶ 23.)

31. This was applied to the payment due June 1, 2014. (Decl. of Nationstar ¶ 23.)

32. On September 2, 2014, Nationstar sent the borrower a notice of default. (Decl. of Nationstar ¶ 24.)

33. The notice of default explained the default was $2,888.73 and the loan remained due for July 1, 2014. (Decl. of Nationstar ¶ 24.)

34. It notified the borrower there was a deadline of October 7, 2014, to pay the total amount due and avoid acceleration of the entire loan balance. (Decl. of Nationstar ¶ 24.)

35. A $605.74 loan payment was made on or about September 22, 2014. (Decl. of Nationstar ¶ 25.)

36. The loan was then due for the July 1, 2014 payment of $940.95 and the $605.74 payment was insufficient to cover it. (Decl. of Nationstar ¶ 25.)

37. The payment was insufficient to cover the $2,888.73 the borrower had until October 7, 2014 to pay to avoid acceleration of the entire loan balance. (Decl. of Nationstar ¶ 25.)

38. Nationstar returned the payment discussed in paragraphs 35-37, above. (Decl. of Nationstar ¶ 25.)

39. Nationstar accelerated the loan balance and the foreclosure process began. (Decl. of Nationstar ¶ 26.)

40. A $605.74 loan payment was made on or about October 19, 2014. (Decl. of Nationstar ¶ 27.)

41. The payment was after the October 7, 2014 deadline to pay the default and

1   insufficient to pay either the default or the full loan balance.  (Decl. of Nationstar ¶ 27.)

2       42.    Nationstar returned the payment.  (Decl. of Nationstar ¶ 27.)

3       43.    Nationstar never received a tender of the full amount due on the loan or an offer

4   or tender of the full amount due on the loan.  (Decl. of Nationstar ¶ 28-29.)

5       44.    Nationstar correctly calculated the taxes, insurance, loan payments, and escrow

6   amounts for the loan.  (Decl. of Nationstar ¶ 30.)

7       45.    The taxes, insurance, loan payments, and escrow amounts included in the

8   payment statements and escrow statements related to the loan were correct.  (Decl. of Nationstar

9   ¶ 31.)

10      46.    Plaintiff never applied to Bank of America or Nationstar to have the note and/or

11  deed of trust transferred and/or assigned to her.  (Decl. of Nationstar ¶ 32.)

12      47.    Plaintiff never applied to Nationstar to qualify for a loan modification through

13  which she could become a borrower on the loan.  (Decl. of Nationstar ¶ 33.)

14                                   **III.**

15                    **SUMMARY JUDGMENT LEGAL STANDARD**

16      Any party may move for summary judgment, and the Court shall grant summary

17  judgment if the movant shows that there is no genuine dispute as to any material fact and the

18  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Washington Mut. Inc. v.

19  U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Summary judgment must be entered "against a party

20  who fails to make a showing sufficient to establish the existence of an element essential to that

21  party's case...."   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   "[A] party seeking

22  summary judgment always bears the initial responsibility of informing the district court of the

23  basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

25  demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 322.

26      If the moving party meets its initial responsibility, the burden then shifts to the opposing

27  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

28  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Each party's position,

1   whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

2   parts of materials in the record, including but not limited to depositions, documents, declarations,

3   or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

4   genuine dispute or that the opposing party cannot produce admissible evidence to support the

5   fact.   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other

6   materials in the record not cited to by the parties, but it is not required to do so.   Fed. R. Civ. P.

7   56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001);

8   accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

9       In judging the evidence at the summary judgment stage, the Court does not make

10   credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509

11   F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

12   inferences in the light most favorable to the nonmoving party and determine whether a genuine

13   issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

14   City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation

15   omitted).

16                                        **IV.**

17                                    **ANALYSIS**

18       Defendant Nationstar argues that Plaintiff does not have standing to assert any claims

19   based on the note or deed of trust because she was not a party to either document.   Additionally,

20   Defendant Nationstar contends that it is undisputed that Nationstar correctly calculated and

21   applied payments.   Defendant Nationstar seeks summary judgment on all claims raised in the

22   complaint.

23       **A.      Breach of Contract Claim**

24       Defendant Nationstar initially argues that Plaintiff cannot prevail on her breach of

25   contract claim because she was not a party to the note or deed of trust executed between

26   Defendant Nationstar's successor in interest and Plaintiff's ex-husband and there is no exception

27   that would apply to provide Plaintiff with standing to enforce the contract.   At issue in this action

28   is a contract to purchase real property.   "Financing or refinancing of real property is generally

1    accomplished in California through a deed of trust.  The borrower (trustor) executes a
2    promissory note and deed of trust, thereby transferring an interest in the property to the lender
3    (beneficiary) as security for repayment of the loan." Bartold v. Glendale Fed. Bank, 81
4    Cal.App.4th 816 (2000), overturned on other grounds due to legislative action.

5        "Under California law, '[a] cause of action for breach of contract requires proof of the
6    following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for
7    nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' "
8    Ehret v. Uber Technologies, Inc., 68 F.Supp.3d 1121, 1139 (N.D. Cal. 2014) (quoting CDF
9    Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008)).  Here, it is undisputed that
10   Plaintiff was not a party to the deed of trust or note executed by Plaintiff's ex-husband.
11   Therefore, in order to prevail on her breach of contract claim, Plaintiff must establish standing to
12   enforce the contract by demonstrating that she falls within an exception to the general rule.  See
13   Jones v. Aetna Cas. & Sur. Co., 26 Cal.App.4th 1717, 1722 (1994) ("someone who is not a party
14   to the contract has no standing to enforce it or to recover extra-contractual damages for the
15   wrongful withholding of benefits to the contracting party").

16       1.    Third Party Beneficiary

17       "California law permits third party beneficiaries to enforce the terms of a contract made
18   for their benefit."  Spinks v. Equity Residential Briarwood Apartments, 171 Cal.App.4th 1004,
19   1021 (2009) (quoting Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman, 65
20   Cal.App.4th 1469, 1485 (1998)).  The California Civil Code provides that a contract made
21   expressly for the benefit of a third party may be enforced by that party at any time before the
22   contract is rescinded.  Cal. Civ. Code § 1559.  While a critical element is that the contract must
23   be made expressly for the benefit of the third party, this does not require that the third party be
24   specifically named or identified in the contract.  Northstar Fin. Advisors Inc. v. Schwab
25   Investments, 779 F.3d 1036, 1062 (9th Cir.), as amended on denial of reh'g and reh'g en banc
26   (Apr. 28, 2015), cert. denied, 136 S. Ct. 240 (2015).  It is the intent of the promisee to benefit the
27   third party that is relevant, because "[t]he point of the third-party-beneficiary doctrine is to allow
28   a third party to enforce, against a promisor, rights running to the third party for which the

9

1    promisee bargained." Souza v. Westlands Water Dist., 135 Cal.App.4th 879, 893 (2006).  The

2    lack of intent by the promisee to benefit the third party defeats the third party claim. Id.

3         "[A] third party beneficiary contract must either satisfy an obligation of the promissee to

4    pay money to the beneficiary, or the circumstances indicate the promissee intends to give the

5    beneficiary the benefit of the promised performance."  Med. Staff of Doctors Med. Ctr. in

6    Modesto v. Kamil, 132 Cal.App.4th 679, 685, 33 Cal. Rptr. 3d 853, 858 (2005), as modified on

7    denial of reh'g (Oct. 6, 2005).  Here, the issue is whether the promisee intended to give Plaintiff

8    the benefit of the promised performance.

9         To determine if a contract was made for the benefit of a third party, California considers

10   "whether an intent to benefit a third person appears from the terms of the contract. See Jones, 26

11   Cal.App.4th at 1725 ("Whether a third party is an intended beneficiary or merely an incidental

12   beneficiary to the contract involves construction of the parties' intent, gleaned from reading the

13   contract as a whole in light of the circumstances under which it was entered.").  If the terms of

14   the contract necessarily require the promisor to confer a benefit on a third person, then the

15   contract, and hence the parties thereto, contemplate a benefit to the third person."  Spinks, 171

16   Cal.App.4th at 1022 (citations omitted).  It is not enough that the third party would have

17   incidentally benefited from performance of the contract.  Id.; Souza, 135 Cal.App.4th at 891.

18   The parties to the contract must have intended to confer a benefit on the third party from the

19   contract.  Spinks, 171 Cal.App.4th at 1022.  This excludes enforcement of the contract by

20   persons who are only incidentally or remotely benefitted from the contract.  Id.

21        Ascertaining the intent of the parties is to be inferred solely from the language of the

22   written contract if possible.  Cal. Civ. Code §§ 1638, 1639; Spinks, 171 Cal.App.4th at 1023.

23   However, evidence offered to explain the meaning to which the contract is reasonably

24   susceptible is relevant and admissible.  Garcia v. Truck Ins. Exch., 36 Cal.3d 426, 435-36

25   (1984).  "A contract may be explained by reference to the circumstances under which it was

26   made, and the matter to which it relates."  Cal. Civ. Code § 1647.  Evidence of the circumstances

27   and negotiations of the parties may be considered in determining the meaning of a written

28   contract allegedly made in part for the benefit of a third person.  Garcia, 36 Cal.3d at 435-36.

1   Defendant Nationstar argues that Plaintiff was not a third party beneficiary under the
2   contract and submits the grant deed, promissory note, and deed of trust showing that the property
3   was purchased by Benigno Romero, a married man as his sole and separate property.  (ECF Nos.
4   57-1, 57-2, 69.)  The question of whether there was an intent to benefit a third party appears from
5   the terms of the contract, Walters v. Calderon, 25 Cal.App.3d 863, 870 (1972), and review of the
6   documents provided does not demonstrate any intent to benefit a third party.  The grant deed,
7   recorded June 16, 2000, grants the property to Benigno Romero, a married man as his sole and
8   separate property.  (ECF No. 57-1.)  In a second grant deed recorded the same date, Plaintiff,
9   wife of grantee, granted the property to Benigno Romero, a married man as his sole and separate
10  property.  (ECF No. 57-1.)  Review of the promissory note and the deed of trust does not indicate
11  any intent that a third party was to benefit from the parties' agreement.

12  While Plaintiff asserts in her complaint that she is a third party beneficiary because she
13  was receiving the benefit of the mortgage contract, without more, the fact that Plaintiff received
14  a benefit from performance of the contract only makes her an incidental beneficiary, and is not
15  enough to show she is an intended beneficiary under the contract.  Souza, 135 Cal.App.4th at
16  895.  The Court finds that Plaintiff has not demonstrated that a genuine issue of material fact
17  exists as to whether she was a third party beneficiary under the contract entered into by the
18  parties to the agreement.

19      2.    Assignee

20  Defendant moves for summary judgment on the ground that Plaintiff's claim that she is
21  an assignee is barred by the statute of frauds and she admitted that she had no contractual
22  relationship with the lender and never attempted to assume the loan.  Additionally, neither Bank
23  of America nor Defendant Nationstar agreed to replace the borrower with Plaintiff on the loan.

24  California's statute of frauds provides that a contract for the sale of real property or an
25  interest therein, "if made by an agent of the party sought to be charged, is invalid, unless the
26  authority of the agent is in writing, subscribed by the party sought to be charged."  Cal. Civ.
27  Code § 1624(a)(3).  Ordinarily a contract can be assigned unless the contract specifically negates
28  the right to assign.  1 Witkin, Summary of Cal. Law, Contracts Ordinarily Assignable, § 712

11

1    (10th ed. 2005).  While no particular form is necessary for an assignment, to be effectual the

2    assignment must be " 'a manifestation to another person by the owner of the right indicating his

3    intention to transfer, without further action or manifestation of intention, the right to such other

4    person, or to a third person." Cockerell v. Title Ins. & Trust Co., 42 Cal.2d 284, 291 (1954); 1

5    Witkin, Summary of Cal. Law, Contracts, § 709, p. 795 (10th ed. 2005).

6        Plaintiff, as the party asserting assignment of the rights under the contract, bears the

7    burden of proving the assignment. Cockerell, 42 Cal.2d at 292.  "In an action by an assignee to

8    enforce an assigned right, the evidence must not only be sufficient to establish the fact of

9    assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of

10   assignment be clear and positive to protect an obligor from any further claim by the primary

11   obligee." Id. (citations omitted).

12       Here, Plaintiff has presented no evidence that Mr. Romero assigned any of his rights

13   under the agreement to Plaintiff.  Although Plaintiff was aware that she needed to take additional

14   steps to effect an assignment of the loan at issue in this action, she did not do so.  (Pl. Depo.

15   32:3-11, 36:20-25.)  Plaintiff has not submitted evidence to create a genuine issue of material

16   fact as to whether she was an assignee.

17       3.    Transfer

18       Relatedly, Plaintiff contends that the judicial divorce decree transferred the breach of

19   contract claim to Plaintiff.  Defendant Nationstar argues that the alleged breach of contract claim

20   was not transferred to Plaintiff by the divorce decree.

21       California defines a thing in action as the "right to recover money or other personal

22   property by a judicial proceeding." Cal. Civ. Code § 953.  The California Civil Code provides

23   that a "thing in action, arising out of the violation of a right of property, or out of an obligation,

24   may be transferred by the owner." Cal. Civ. Code § 954; see also Cal. Civ. Code §§ 1457, 1458

25   (the burdens and rights under an obligation may be transferred with the consent of the party

26   entitled to the benefit).  California has a strong policy in favor of transferability of all types of

27   property, which includes the rights under contracts. Farmland Irr. Co. v. Dopplmaier, 48 Cal.2d

28   208, 222 (1957)  "Assignable are choses in action arising out of an obligation or breach of

12

contract as are those arising out of the violation of a right of property or a wrong involving injury to personal or real property." Baum v. Duckor, Spradling & Metzger, 72 Cal.App.4th 54, 65 (1999), as modified (May 18, 1999) (citations omitted).

In this instance, Plaintiff has not presented any evidence that either party to the contract consented to transfer the burden or rights under the contract to her. Specifically, Plaintiff stated that she did not contact Mr. Romero when she obtained the divorce nor when filing the current action. (Pl. Depo. 12:5-19, 32:20-22.) Plaintiff contends that the loan was transferred to her through the decree entered by the court in her divorce proceedings. (Id. at 17:5-25; 34:15-23.) However, the divorce decree itself states that "Each party is ordered to execute any documents to effectuate this order." (ECF No. 69-1 at 77.)

At the time that she was seeking the divorce, Plaintiff was informed of the steps she needed to take to have the mortgage put in her name. (Id. at 36:20-37:9.) Plaintiff obtained her divorce through "Self-Help" and they showed her how to complete the documents for the property. (Id. at 37:1-21.) Plaintiff had copies made but had not recorded any documents. (Id. at 38:8-22.) Plaintiff never informed Bank or America or Defendant Nationstar of the divorce decree. (Id. at 35:5-36:12, 41:4-12.)

Plaintiff has presented no evidence that any party to the contract transferred her rights under the contract. Plaintiff has failed to produce evidence to establish that she has standing to bring an action for breach of the contract at issue in this action.

4.   Defendant Did Not Breach the Terms of the Contract

Further, even assuming that Plaintiff could bring the breach of contract claim, she has not demonstrated that a genuine issue of material fact exists to preclude entry of summary judgment on behalf of the defendants. Plaintiff's second amended complaint alleges that the borrower performed all significant things required under the contract and Defendant breached the contract by insisting that Plaintiff's loan had a past due balance even though she tendered all payments required by the loan and increasing the escrow without cause and without notice. (ECF No. 23 at ¶¶ 32-34.)

The deed of trust executed between the parties provides that the borrower shall include in

each monthly payment, together with the principal and interest in the note and any late charges, taxes and special assessments levied or to be levied against the property, leasehold payments or ground rents on the property, and premiums for insurance.  (Deed of Trust ¶ 2, ECF No. 57-3.) If mortgage insurance is due on the loan, the monthly payment shall also include the payment for mortgage insurance.  (Id.)  These items are "escrow items."  (Id.)  If at any time the amounts held are insufficient to pay the escrow items when due, "the Lender may notify the Borrower and require the Borrower to make up the shortage."  (Id.)

Defendant has presented evidence that the escrow account was short $1,625.36 on June 28, 2013.  (ECF No. 69-2 at 22, 53-54.)  Bank of America, who was servicing the loan at the time, sent an annual disclosure statement to the borrower dated August 8, 2013 informing him of the escrow shortage.  (Id. at 21-2.)  Therefore, when the loan was transferred to Defendant Nationstar in November 2013 there was an escrow shortage.  (Undisputed Fact ("U.F.") 5.)

The mortgage statement dated February 11, 2014, showed that the escrow account was short $861.16 (ECF No. 69-2 at 23), and included an annual escrow disclosure statement which notified the borrower that due to changes in tax and insurance premiums the monthly payment on the mortgage would be increasing to $1,004.56 on April 1, 2014.  (Id. at 27.)

While Plaintiff alleges that the payment amounts changed without notice, the deed of trust provides that any notices to the borrower shall be provided by mailing them by first class mail to the property address or any other address the borrower designates by notice to the lender. (Deed of Trust ¶ 13.)  Any notice given as provided in the deed of trust shall be deemed to have been given to borrower or lender.  (Id.)  The statements were mailed to the borrower at the address of record as agreed to by the agreement of the parties.   Accordingly, Defendant Nationstar has presented evidence that the notice provided was in accord with the agreement of the parties.

Plaintiff alleges that she tendered all payments as required under the loan, however, Defendant Nationstar has presented evidence that as of April 1, 2014, the mortgage payment due was $1,004.56 and Plaintiff continued making payments of $605.74.  (U.F. 9, 11, 15, 19.) Monthly mortgage statements were sent to the borrower showing that only partial payments had

1  been made on the mortgage and the amount due on the loan.  (ECF No. 69-2 at 29-36, 37-43.)

2  Plaintiff continued to make monthly payments of $605.74 while the mortgage payments due

3  were $1,004.56 per month from April 1, 2014 through June 1, 2014, and $940.95 after July 1,

4  2014.  (U.F. 10, 11, 15, 19, 22, 24, 28.)  Plaintiff did not tender all payments due under the

5  mortgage.

6        The deed of trust also provides that in the case of payment default, the lender may require

7  immediate payment in full of all sums secured by the deed of trust if the borrower defaults by

8  failing to pay in full any monthly payment required by the deed of trust prior to or on the due

9  date of the next monthly payment or the borrower defaults by failing, for a period of thirty days,

10  to perform any obligations contained in the deed of trust.  (Id. at ¶ 9(a).)  The lender does not

11  waive its rights by not requiring full payment if circumstances arise that would permit the lender

12  to require immediate payment in full.  (Id. at 9(c).)  Nor is the borrow released should the lender

13  extend time of payment or modify the amortization of the sums secured by the deed of trust.  (Id.

14  at ¶ 11.)

15        On September 2, 2014, as provided by the deed of trust, Defendant Nationstar sent the

16  borrower a notice of default.  (U.F. 32.)  The borrower was provided with a deadline of October

17  7, 2014, to pay the total amount due and avoid acceleration of the loan.  (U.F. 34.)  The borrower

18  did not pay the total amount due by October 7, 2014, so the loan balance was accelerated and the

19  foreclosure process began.  (U.F. 35-41.)  Defendant Nationstar has never received a tender of

20  payment of the full amount due on the loan.  (U.F. 44.)

21        Even assuming that Plaintiff did have standing to bring a breach of contract claim in this

22  action, Plaintiff has not met her burden of demonstrating that any genuine issue of material fact

23  exists as to whether Defendant Nationstar breached the contract.  Defendant Nationstar is entitled

24  to summary judgment on the breach of contract claim.

25        **B.**     **Breach of Covenant of Good Faith and Fair Dealing**

26        Defendant Nationstar also seeks summary judgment on Plaintiff's claim alleging a

27  violation of the breach of the covenant of good faith and fair dealing.

28        "Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and its enforcement." <u>Foley v. Interactive Data Corp.</u>, 47 Cal.3d 654, 683 (1988) (quoting Rest.2d Contracts, § 205).  The covenant of good faith and fair dealing is implied by law in every contract and exists to prevent one party to the contract from unfairly frustrating the other contracting party's right to receive the benefits of the agreement actually made.  <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal.4th 317, 349 (2000).

"The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation."  <u>Racine & Laramie, Ltd. v. Dep't of Parks & Recreation</u>, 11 Cal.App.4th 1026, 1031 (1992), reh'g denied and opinion modified (Jan. 6, 1993), as modified on denial of reh'g (Mar. 25, 1993).  "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  <u>Spinks</u>, 171 Cal.App.4th at 477 (quoting <u>Smith v. City and County of San Francisco</u>, 225 Cal.App.3d 38, 49, (1990)).  ]  "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."  <u>Spinks</u>, 171 Cal.App.4th at 477 (quoting <u>Pasadena Live v. City of Pasadena</u>, 114 Cal.App.4th 1089, 1094 (2004)).

There is no duty to deal fairly or in good faith absent the existence of a contract.  <u>Racine</u>, 11 Cal.App.4th at 1032.  Without the existence of a contractual relationship between the parties in this action, Plaintiff cannot state a cause of action for breach of the implied covenant of good faith and fair dealing.  <u>Smith</u>, 225 Cal.App.3d at 49.

Further, to prevail on a claim for breach of the covenant of good faith and fair dealing, the plaintiff must show that "the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal.App.3d 1371, 1395( 1990), as modified on denial of reh'g (Oct. 31, 2001).  If the actions alleging a breach of

the implied covenant do not go beyond a mere breach of contract and rely on the same facts as the breach of contract claim and seek the same recovery, a breach of the implied covenant claim may be disregarded as no additional claim has been stated.  Careau & Co., 222 Cal.App.3d at 1395.

Plaintiff alleges that Defendant Nationstar breached the covenant of good faith and fair dealing by insisting that Plaintiff had a past due loan balance although she had tendered all payments required by the loan and changing the escrow account without cause and without notice.  (ECF No. 23 at ¶ 41.)  These are the same allegations upon which Plaintiff bases her breach of contract claim.  Insofar as Plaintiff has alleged acts that are directly actionable as a breach of an implied-in-fact contract term, this claim that merely realleges that breach as a violation of the covenant of good faith and fair dealing is superfluous.  Guz, 24 Cal.4th at 352; cf. Longest v. Green Tree Servicing LLC, 74 F.Supp.3d 1289, 1301 (C.D. Cal. 2015) (finding the plaintiff had plead sufficiently distinct conduct to support their claim for breach of the implied covenant of good faith and fair dealing).

Finally, "acts that comply with the terms of a contract 'cannot without more be equated with bad faith.' "  Am. Student Fin. Grp., Inc. v. Dade Med. Coll., Inc., 180 F.Supp.3d 671, 679 (S.D. Cal. 2015) (quoting Balfour, Guthrie & Co., Ltd. v. Gourmet Farms, 108 Cal.App.3d 181, 191 (1980)); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 479 (1989), reh'g denied and opinion modified (Sept. 21, 1989).  Plaintiff has not demonstrated that Defendant Nationstar engaged in any conduct that did not comply with the terms of the contract and Defendant Nationstar is entitled to summary judgment on the breach of the implied covenant of good faith and fair dealing claim.

### C.    California Business and Professions Code Section 17200

Plaintiff alleges in her complaint that Defendant Nationstar violated California's Unfair Competition Law ("UCL") by violating laws as alleged in the complaint and since the conduct was unfair and fraudulent it violates California public policy.  Defendant Nationstar seeks summary judgment on this claim as Plaintiff does not have standing to bring a claim based on the contract, and there is no evidence to support the claim that Defendant Nationstar engaged in

1    unfair or fraudulent conduct.

2        "The UCL does not proscribe specific activities, but broadly prohibits 'any unlawful,

3    unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

4    advertising.' " Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 643–44 (2008)

5    (quoting Cal Bus. & Prof. Code § 17200).  "An act can be alleged to violate any or all three of

6    the prongs of the UCL—unlawful, unfair, or fraudulent."  Stearns v. Select Comfort Retail Corp.,

7    763 F.Supp.2d 1128, 1149 (N.D. Cal. 2010) (quoting Berryman v. Merit Prop. Mgmt., Inc., 152

8    Cal.App.4th 1544, 1554 (2007)).  A breach of contract action may be the predicate for UCL

9    claims provided the conduct is "unlawful, unfair, or fraudulent."  Puentes, 160 Cal.App.4th at

10   645.

11       1.    Unlawful Conduct

12       Plaintiff alleges that Defendant Nationstar engaged in unlawful conduct to the extent that

13   it violated the law as alleged in the complaint.  "For an action based upon an allegedly unlawful

14   business practice, the UCL 'borrows violations of other laws and treats them as unlawful

15   practices that the unfair competition law makes independently actionable.' "  Stearns, 763

16   F.Supp.2d at 1150 (citation omitted); see also Smith v. State Farm Mutual Automobile Ins. Co.,

17   93 Cal.App.4th 700, 718-19 (2001) ("An 'unlawful' business activity includes 'anything that can

18   properly be called a business practice and that at the same time is forbidden by law.").

19       "In essence, an action based on Business and Professions Code section 17200 to redress

20   an unlawful business practice 'borrows' violations of other laws and treats these violations, when

21   committed pursuant to business activity, as unlawful practices independently actionable under

22   section 17200 et seq. and subject to the distinct remedies provided thereunder."  Farmers Ins.

23   Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992).  However, Plaintiff's second amended

24   complaint is devoid of any allegations that there was a violation of any law.  Therefore, Plaintiff

25   has not demonstrated that there is a genuine issue of material fact on the claim that Defendant

26   Nationstar engaged in unlawful conduct.

27       2.    Fraudulent Conduct

28       Plaintiff contends that Defendant Nationstar engaged in fraudulent conduct by insisting

1    that Plaintiff had a past due loan balance although she tendered all payments required by the loan

2    and by changing Plaintiff's escrow without cause and notice.

3          "The term 'fraudulent' as used in section 17200 'does not refer to the common law tort of

4    fraud but only requires a showing members of the public 'are likely to be deceived.' " Puentes,

5    160 Cal.App.4th at 645 (quoting Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (1994);

6    Byars v. SCME Mortgage Bankers, Inc., 109 Cal.App.4th 1134, 1147 (2003)).  "Unless the

7    challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the

8    effect it would have on a reasonable consumer." Puentes, 160 Cal.App.4th at 645 (quoting Aron

9    v. U–Haul Co. of California, 143 Cal.App.4th 796, 806 (2006)).

10         However, as discussed above Plaintiff has not demonstrated that the escrow amount was

11   changed without cause or notice or that the borrower tendered all payments as required under the

12   loan.  Plaintiff has not demonstrated that a genuine issue of material fact exists on her claim that

13   Defendant Nationstar engaged in fraudulent conduct.

14         3.    Unfair Conduct

15         Plaintiff also contends that Defendant Nationstar engaged in unfair conduct by insisting

16   that Plaintiff had a past due loan balance although she tendered all payments required by the loan

17   and by changing Plaintiff's escrow without cause and notice.  In a consumer action, the proper

18   definition of unfair under the UCL is uncertain.  Puentes, 160 Cal.App.4th at 646.  In Cel-Tech

19   Commc'ns, Inc. v. Los Angeles Cellular Tel. Co. ("Cel-Tech"), 20 Cal.4th 163, 179 (1999), the

20   California Supreme Court considered the meaning of unfair in the context of direct business

21   competitors.  The Court held that a plaintiff who alleges "an injury from a direct competitor's

22   'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct

23   that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of

24   those laws because its effects are comparable to or the same as a violation of the law, or

25   otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.  The Court

26   declined to decide the meaning of unlawful in the context of actions brought by consumers or

27   other claims by competitors under the UCL.  Id. at 187 n.12.

28         Following the decision in Cel-Tech, California courts have been divided on whether to

1  apply the definition in <u>Cel-Tech</u> to UCL actions brought by consumers.   <u>Puentes</u>, 160

2  Cal.App.4th at 646 (collecting cases).

3         In <u>Lueras v. BAC Home Loans Servicing, LP</u>, 221 Cal.App.4th 49, 81 (2013), the court

4  recited the definitions of unfair that have been used by different courts.

> By defining "unfair competition" to include any unlawful act or practice, the UCL
> permits violations of other laws to be treated as independently actionable as unfair
> competition.    (<u>Cel–Tech Communications, Inc. v. Los Angeles Cellular
> Telephone Co.</u>, <u>supra</u>, 20 Cal.4th at p. 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.)   "
> '[A]n "unfair" business practice occurs when that practice "offends an established
> public policy or when the practice is immoral, unethical, oppressive, unscrupulous
> or substantially injurious to consumers." [Citation.]' [Citation.]"  (<u>Smith v. State
> Farm Mutual Automobile Ins. Co.</u> (2001) 93 Cal.App.4th 700, 719, 113
> Cal.Rptr.2d 399.)   An unfair business practice also means " 'the public policy
> which is a predicate to the action must be "tethered" to specific constitutional,
> statutory or regulatory provisions.' "  (<u>Scripps Clinic v. Superior Court</u> (2003)
> 108 Cal.App.4th 917, 940, 134 Cal.Rptr.2d 101.)

<u>Lueras</u>, 221 Cal.App.4th at 81; <u>see</u> <u>also</u> <u>Jolley v. Chase Home Fin., LLC</u>, 213 Cal.App.4th 872,

907 (2013), as modified on denial of reh'g (Mar. 7, 2013) (some courts "hold an 'unfair' practice

is one that offends established public policy, that is immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers, or that has an impact on the victim that

outweighs defendant's reasons, justifications, and motives for the practice" and other courts hold

"that the public policy which is a predicate to a claim under the 'unfair' prong of the UCL must

be tethered to specific constitutional, statutory, or regulatory provisions"); <u>Cardoni v. Wells

Fargo Bank N.A.</u>, No. D066351, 2015 WL 1413641, at *14 (Mar. 26, 2015) (requiring plaintiff

to prove the defendant's "conduct is tethered to an[ ] underlying constitutional, statutory or

regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the

policy or spirit of an antitrust law" for an unfair competition claim).

        However, regardless of the definition that would apply to "unfair" in this action, Plaintiff

has not demonstrated that Defendants engaged in any unfair conduct in foreclosing upon the

delinquent loan at issue herein.  Defendant presents evidence that the escrow amount on the loan

changed due to the escrow shortage when the loan was transferred and that written notice of the

increased loan payment was provided to the borrower.  Payments were not applied to the loan

balance because they were insufficient to meet the amount due until funds were available to meet

the full payment.   The borrower was notified that the payments were delinquent and was provided with a date by which to make the payments current.   The borrower did not make the loan payments current by the date provided and has never proffered payment of the balance due on the loan.

Plaintiff has not demonstrated that a material issue of genuine fact exists and Defendants are entitled to summary judgment on the UCL claim.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that

1.   Defendant Nationstar Mortgage Co., LLC's motion for summary judgment is GRANTED;

2.   Judgment is entered in favor of Defendant Nationstar Mortgage Co, LLC and Barrett Daffin Frappier Treder & Weiss, LLP; and

3.   The Clerk of the Court is DIRECTED to close this matter.

IT IS SO ORDERED.

Dated:   **March 10, 2017**

UNITED STATES MAGISTRATE JUDGE